Good morning. The first case we're going to hear today is REACH Community Development v. U.S. Department of Homeland Security. And Ms. Scully, you can begin whenever you're ready. And if you want to save time for rebuttal, please watch the clock. From Ms. Scully for the United States, may I please report I'll reserve two minutes for a vote. The wind carries aerosolized chemicals after federal officers use chemical irritants to disperse protests near the ICE facility in Fort McCorkin. The district court recognized a novel theory of substance and due process, one that the court itself admitted had not been recognized before, and one that the court did not conduct the requisite history and tradition analysis to identify. That right is a right of bodily integrity, free from non-consensual exposure to toxic airborne substances. Based on that right, the district court imposed a novel remedy that under the court's reasoning would effectively prohibit police officers from ever using chemical irritants in an urban area because there's a chance that the wind could carry the aerosolized chemicals and affect people downwind. That remedy has no basis in law, and we ask that the court state the injunction in the government's view. Counsel, hasn't the Supreme Court in Glucksburg recognized a right to broad bodily integrity, sort of broadly phrased? There's a kind of a throwaway line in that opinion that mentions that, and that appears, to me at least, to be what plaintiffs are hinging their case on. So if you can respond to that point. ...is not carefully defined, which Glucksburg requires the court as the first step in the substantive due process analysis. And similarly in Glucksburg and in Dobbs, the Supreme Court said that abstract concepts of bodily autonomy are not a recognized substantive due process right. And so invoking such a broad and abstract concept of bodily integrity in this case similarly fails the requisite substantive due process test. The district court properly did follow the carefully defined requirement. The problem is that that carefully defined right has no basis in this nation's history or tradition as the district court recognized. The district court did not consider Anglo-American common law, did not consider state statutes, did not consider any treatises, which the Supreme Court examined in Glucksburg and Dobbs. Absent that type of historical analysis, the district court engaged in judicial policymaking, which Dobbs tells us is not permitted under substantive due process. Well the district court counsel cited cases involving the taking of involuntary taking of medication. And so why can't the plaintiffs reason by analogy to those cases? We have Glucksburg said that reasoning by analogy from a purported fundamental right to previously recognized fundamental rights violates the requisite historical analysis. So for example, in Glucksburg, plaintiffs attempted to analogize a right of assisted suicide to Cruzan's recognized fundamental right to be free of non-consensual life-saving medical treatment. And the court in Glucksburg said that type of backwards engineering from an established fundamental right to a new fundamental right does not comport with the requisite history and tradition analysis. And so here, plaintiffs and the district court are trying to do the exact same thing. As Glucksburg explained, the right to be free from non-consensual medical treatment is rounded in the Anglo-American common law tradition. Here, there's no similar analysis. And so at the very least, the district court's recognition of this purported fundamental right was legal error. But plaintiffs didn't point us to any historical examples either. Plaintiffs relied on those same cases that recognized a carefully defined right to be free of non-consensual medical treatment. And that was all they pointed us to. That is insufficient. This is a right that no court has ever recognized. And not only did the district court provide preliminary injunctive relief based on a novel theory-assessing process, but the district court then imposed a prospective ban on police officers using chemical irritants in urban areas because it's possible based on humidity and temperature and precipitation and wind direction and wind speed that the wind could carry aerosolized chemicals and affect people downwind. That type of prospective ban does not take into consideration the particular facts and circumstances that the officers face. And based on the district court's findings, those circumstances include repeated trespass on federal property, assaults on federal officers, throwing objects like rocks and water bottles, and ignoring dispersal orders. If I can interrupt, you've said repeatedly the district court didn't engage in the proper history and tradition analysis. So are you saying that we should send it back to the district court to analyze it further? Or you're saying there is no such substantive due process right here? Based on the arguments that plaintiffs have made, plaintiff's legal theory is that the court should recognize a new fundamental right by analogizing to the case law recognizing a fundamental right to be free of non-consensual medical treatment. Based on that theory of substantive due process, that is wrong under the requisite history and tradition analysis, and plaintiffs have offered us no other basis to recognize the right. So I would say that plaintiff's theory, as it has been explained thus far, is not a fundamental right cognizable under substantive due process. Were the court to conduct the proper history and tradition analysis on the merits as this litigation moves forward under a stay, I can't hypothesize what would happen in additional litigation, but at a minimum, the injunction should be stayed because the proper analytical framework has not yet been formed. So, Counselor, I want to ask you a few questions about DHS's own policies regarding when it would be prudent to use the chemical agents or whatnot. They said, shouldn't use it when there's small children around, shouldn't use it around the elderly, or people who are unable to quickly disperse. Your Honor, I believe the policy says that officers should consider those circumstances before using chemical agents. And, okay, so I guess my concern is all of these folks are the exact folks that we're dealing with here. We're dealing with small children who live in these gray landing apartments, we're dealing with the elderly, and both of those groups actually could be people that would be unable to disperse rapidly. So I guess my question is, I don't see the court's preliminary injunction being that different from what DHS is already requiring. I believe it's different, Your Honor, because DHS policy provides that officers must consider those factors, not that they may not use chemical irritants. And this preliminary injunction forbids the use of chemical irritants as a prospective matter, regardless of whether any of those populations are present when officers use the chemical irritants. And importantly, it's not that officers are using these chemical irritants against those populations. It's that after officers use the chemical irritants, based on the facts and circumstances they face, the wind carries those aerosolized chemicals, and people downwind are affected. So I just don't see how DHS policy is implicated here, and neither did the district court. The district court made clear, based on plaintiff's own arguments, that whether or not any particular use of chemical irritants to disperse protests was lawful with respect to the protest, that has no bearing on plaintiff's substantive due process theory. As plaintiffs argued at the oral argument hearing, even if the use of chemical irritants was lawful with respect to the protesters, it nonetheless violates the substantive due process rights of people in Gray's Landing, based on a novel theory that the district court acknowledged had never been recognized before. So this injunction was in place for 10 days or so before the government brought this appeal. What sort of dangerous conditions did the folks face as a result of having this injunction in those 10 days? That evidence is not in the record before this court, Your Honor. I would point the court to the district court's findings about the past type of protests, and the government is irreparably injured because we cannot predict the intensity of protests that will arise outside of the facility. And by completely eliminating a defensive law enforcement tool that forms an intermediary force to lead hands-on techniques and lethal force, the government is irreparably injured because anybody could be injured in the course of those protests. Chemical irritants are a critical defensive law enforcement tool, and limiting the government's ability to use them based on facts and circumstances facing officers irreparably harms the government. I'd like to reserve the remainder of my time. Great, thank you. Mr. Rookworth, whenever you're ready. Thank you, Judge Lee. May it please the court, Stephen Worth on behalf of plaintiffs. I want to start with the government's claim of irreparable harm because that's the threshold requirement on a motion to stay pending appeal, and the government has not remotely carried its burden. The government operated under restrictions on chemical munitions at this site for over eight weeks, first under the Dickinson TRO, then under the preliminary injunction at issue here, and the record does not contain a single documented operational harm. Not a single incident when officers were unable to protect the facility or themselves, and the government has put in no evidence that they are currently suffering, or were suffering before the administrative stay, any irreparable harm. The government's harm is simply speculative. A plaintiff's harm here is not. They've suffered and will continue to suffer grievous injuries if the government continues its conduct. We're talking about acute respiratory distress, chemical burns, chronic coughing, heart palpitations, severe PTSD episodes. One plaintiff here has had to have an adrenal gland surgically removed because the gas exacerbated her Cushing's disease, and further exposure threatens her life. Children who were healthy before are being exposed to this chemical munitions campaign and now have to take daily medication. These are real harms, not speculative harms, and this court can deny the government's motion simply based on the lack of irreparable harm present in the record. I think on the merits, this case is a straightforward application of the right to bodily integrity. I know the government points to Glucksburg, but Glucksburg was not about the right to bodily integrity. It was about defining a new constitutional right to assisted dying, and the court said that there was no history and tradition of that new It did not say that there was no right to bodily integrity. In fact, the Supreme Court has reaffirmed that right time and time again, going back to 1891 and all the way through today. I would also, in particular, point this court to this court's own precedents, which have, since Glucksburg, reaffirmed the right to bodily integrity in a variety of contexts, including outside of medical battery contexts that the government attempts to rely on. There's no question that in this circuit, the right to bodily integrity applies outside of the medical battery context. It applies in, for example, cases of sexual abuse, like in the Plumeau case, or in cases of corporal punishment. I think, and beyond that, you can see every circuit has applied the right to bodily integrity outside of the medical battery context. I think we would point, in particular, to the Sixth Circuit's decision in Girton against Michigan, the water contamination case, but there are cases everywhere, including in the Fifth Circuit, where courts have recognized that non-forcible coercion by the police can amount to a bodily integrity violation of the right to bodily integrity. To be very clear, the government is attempting to force us to define the right at an extremely granular level of generality, but that's simply not the way that this court has ever approached that question, and it's not the way that the Supreme Court has approached it either. Counsel, do you have any case that speaks to the use of tear gas or crowd dispersal munitions in response to disruptive crowds? In other words, I hear your point about the water contamination, about medication, and all the rest, but those cases really, in my mind, are remotely analogous to the instance here, where the officers are using these mechanisms in response to crowds and seeking to disperse disruptive crowds. I understand your question, Judge Tong. I think there's sort of two responses here. The first is to say that the government's response to crowds is really a question about whether this is shocking behavior, not whether it implicates the right at all. But even on whether this implicates the right question, I would point the court to this court's decision in Spain against Procunior, which is an Eighth Amendment bodily integrity claim, but that involves the exposure to tear gas that is directed at some incarcerated persons that affected bystanders, essentially. And I would also point the court to this court's decisions involving the state-created danger doctrine. We're not relying on a state-created danger framework here, but notably in those cases which do deal with the right to bodily integrity, this court has held that exposure to toxic mold implicates bodily integrity, that exposure to COVID-19 implicates bodily integrity. So I do think that there are close analogs that the court can draw to both its Fifth Amendment case law and to its Eighth Amendment case law and to the state-created danger case law. Sorry, if I can interrupt on that point. What's the best substantive due process case that you rely on from the Ninth Circuit or the Supreme Court? So I think that the best cases for us are, in this court, I would point to Nicholson and Abdelaziz. Those are two critical cases for us. I think I would also point to this court's other sort of general bodily integrity cases, like Plumeau. I would point to the Supreme Court's decisions in Roach v. California, which is inducing vomit to obtain evidence. I would point to the Supreme Court's decision in Ingraham v. Wright, which recognized the right to bodily integrity in the school corporal punishment context. I guess the point is that this court and the Supreme Court and every court of appeals has recognized that the right to bodily integrity applies in a vast array of factual circumstances. I'd like to go back very quickly to the point that Judge Tung raised about this being in response to violent protests. One, I think the court should absolutely look at the record in this case and look at the videos that the district court relied on in this case to see that on numerous occasions the government was not responding to violent protests, and in particular that the government was creating political propaganda to post on its Instagram accounts. These are not law enforcement operations. These are propaganda operations. The district court was right to take that into account when it was assessing the government's interests here. Counsel, I looked at some of the declarations that were filed in this case, and Robert Cantu's declaration appeared striking to me on one of the days that I think the district court focused on January 31st, 2026, where there were purportedly large amounts of chemical munitions used. There, Cantu testifies that there were a few thousand protesters. They began banging on the guard shack, attempted to barricade the door, were tearing plywood off the guard shack. Multiple protesters threw hard unknown objects at law enforcement officers. They threw rocks at cameras, prying plywood off the back of the guard shack again, moved a dumpster toward the front gate and blocking the driveway. Do you dispute that testimony? I think that the district court laid out the evidence correctly, and I think the court should examine the district court's explanation of both the government's witnesses' testimony and the video evidence that the district court reviewed. I don't dispute the specific allegations of Mr. Cantu. I would note that Mr. Cantu, who works for FPS, his agency does not permit the use of tear gas at all, which is the substance that we are in particular complaining of that is causing especially grievous harm to our clients. So it is noticeable that FPS, which is charged with protecting the United States' property, with protecting these officers, it doesn't authorize the use of these munitions whatsoever. They're not necessary for the agency to be able to protect these types of harms. I'd like to speak very briefly before my time ends about the scope of the injunction here. I want to make very clear that there is no difficulty for the government to comply with this injunction. It does not forbid all uses of chemical munitions, as the government has said. It does not forbid the government from using chemical munitions when necessary to protect against threats to life. And I think it is especially important that it would allow, for example, the government to use CS spray, which is like capsaicin spray or bear spray, in order to protect officers in front of the building. They could use that in the driveway, they could use that to protect against damage to property. So these agencies do have tools that they can use. Instead, what they've done on multiple occasions is attempt to create propaganda by saturating the area, videographing it, and putting it up on their Instagram account. I think it's inappropriate. The government has never denied that, and I invite the government to deny it now on reply. I think it's absolutely, the district court was correct to determine that the government had no lawful basis for these uses of force. But those bear spray probably wouldn't be effective when you have a situation as described in the in the Cantu Declaration, where there are literally thousands of people near the ice center. In those cases, probably tear gas is the most effective way to disperse the crowd. And if the crowd presented a risk of danger to life, the government would be free to use tear gas in those circumstances. Otherwise, the district court was balancing the harms to our clients who face a risk of risk to their own lives from these deployments and was correct to determine that a reasonable exception for risk of life to officers or to the public was appropriate. Thank you. Thank you, Dr. Brown. I'd just like to pick up where Mr. Wray felt off, which is the fact that as Plaintiff's own expert testified, the wind determines where these funds will be. The scope of the injunction is tied to a host of environmental factors. That's what determines whether or not federal officers will have violated this injunction. On the irreparable harm, thankfully, there has not been an incident at the Portland Ice Facility that has led to injury to the public, injury to protesters, injury to federal officers, or a breach of the facility. The government is not required to wait for such harm to show that such a prospective injunction should be stated. What's more, the government is irreparably injured because the day-to-day oversight of federal law enforcement operations lies with the executive branch, not with article 3 courts. If plaintiffs purported substantive due process right existed, and if this type of remedy were mandated by the Constitution, we would see examples. We would see cases where courts have similarly enjoined the emission of airborne contaminants. We do not. Plaintiffs are unable to point us to any such examples. That shows that this right is not deeply rooted in the Constitution and that the injunction should be stayed pending the government's opinion. Counsel, I know your time is up, but I did want you to respond to the political propaganda that counsel mentioned, that these videos were being made and the chemicals were being dispersed simply for purposes of political propaganda to be placed on social media feeds. That answer is not in the record, Your Honor, but the district court made clear that whether or not any use of chemical irritants was lawful with respect to professors has no bearing on plaintiff's substantive due process theory. Whether that finding or any evidence in the record does not have any bearing on this court's decision as to the district court's legal errors. Okay. Great. Thank you both for the helpful argument. The case is submitted.
judges: LEE, ALBA, TUNG